1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  ANTONIO SULLIVAN,                          CV F   02-6454 REC SMS HC

10                    Petitioner,             FINDINGS AND RECOMMENDATIONS
                                              REGARDING PETITION FOR WRIT OF
11        v.                                  HABEAS CORPUS

12                                            [Doc. 1]
   MIKE YARBOROUGH,
13
                      Respondents.
14  _____/

15

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus
16
   pursuant to 28 U.S.C. § 2254.
17
                              PROCEDURAL HISTORY
18
        Petitioner was convicted in the Kern County Superior Court of being under the influence
19
   of an alcoholic beverage or drug (Ca. Veh.[1] Code, § 23152(a), former § 23175.5) and driving
20
   with 0.08 percent or more alcohol in his blood (Ca. Veh. Code, § 23152(b)), having suffered a
21
   prior felony within ten years for driving under the influence.  The jury also found true the
22
   allegations that Petitioner had suffered two prior felony convictions, namely a 1972 conviction
23
   for murder and a 1989 conviction for grossly negligent discharge of a firearm (Ca. Pen. Code, §§
24
   187, 246.3, respectively) within the meaning of the three strikes law, California Penal Code
25
   sections 667(c)-(j), 1170.12 (a)-(e).  Petitioner was sentenced to twenty-five years to life in state
26
   prison.
27

28
        _____
        [1] The substance of former section 23175.5 is now contained in section 23550.5.

                                    1

1    Petitioner filed a timely notice of appeal with the California Court of Appeal, Fifth

2    Appellate District.  On May 20, 2002, the Court of Appeal affirmed the conviction and sentence.

3    (Respondent's Exhibit E, attached to Answer.)

4    Petitioner filed a petition for review with the California Supreme Court.  The petition was

5    denied on July 24, 2002.  (Respondent's Exhibit G, attached to Answer.)

6    On February 21, 2002, Petitioner filed a petition for writ of habeas corpus with the

7    California Court of Appeal, Fifth Appellate District.  This petition was denied on April 11, 2002.

8    (Respondent's Exhibit I, attached to Answer.)

9    Petitioner filed the instant federal petition for writ of habeas corpus on November 21,

10   2002 raising the following claims for relief: 1) trial court error for denying motion to dismiss on

11   speedy trial grounds; 2) that the trial court erroneously admitted evidence of the preliminary

12   alcohol screening ("PAS") test results; and 3) that his sentence of twenty-five years to life

13   constitutes cruel and unusual punishment.

14   On July 31, 2003, Respondent filed a motion to dismiss the petition as Claim Three was

15   unexhausted.  On November 3, 2003, the undersigned issued a Report and Recommendation that

16   the motion to dismiss be granted and the petition be dismissed as a "mixed" petition.  On

17   November 24, 2003, Petitioner filed objections and requested that the unexhausted claim be

18   withdrawn from the petition.  By order of December 12, 2003, the Court granted Petitioner's

19   request to withdraw Claim Three and vacated the recommendation to dismiss the petition.

20   Therefore, this action is proceeding on Claims One and Two only.  Respondent filed an answer

21   to the petition on May 10, 2004.  Petitioner did not file a traverse.[2]

STATEMENT OF FACTS[3]

23       On August 4, 1998, [Petitioner] was arrest for driving under the influence
         of alcohol or drugs. [Petitioner] told the arresting officer that he had drunk one
24       beer and also that he was taking nitroglycerin and codeine for diabetes, with the

25   _____

26   [2]  The Court notes that its March 10, 2004, order directing Respondent to file a response informed
     Petitioner that a traverse was due within thirty days from the date Respondent filed its answer.  (Court Doc. 27.)

27   [3]  The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth
     Appellate District appearing as Exhibit E, of the Answer to the Petition for Writ of Habeas Corpus.  The Court finds
28   the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

last dosage approximately one-half hour before the stop. A Preliminary Alcohol Screening (PAS) breath test administered at the scene indicated a blood alcohol level of 0.122. A subsequent blood test indicated a blood alcohol level of 0.15. The sample was not tested for drugs.

> A complaint charging [Petitioner] with misdemeanor violations of section 23152, subdivisions (a) and (b) was filed on August 18, 1998. The charges were refiled in a felony complaint on October 15, 1998. The misdemeanor charges were dropped October 23, 1998. A warrant for [Petitioner's] arrest issued at the same time. However, the warrant was not executed until August 31, 1999, when [Petitioner] was arrested on another matter.

> On December 17, 1999, defense counsel moved to obtain a portion of the blood sample so as to conduct further testing. The prosecutor's response indicated that "[t]he blood in this case was destroyed. The laboratory only holds the blood for one year. A request was not submitted by the People or the Defense to maintain the blood. Consequently, there is no blood available for independent analysis." The court denied the motion.

(Respondent's Exhibit E, Opinion, at 2-3.)

### DISCUSSION

A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

1   B.    Standard of Review

2        This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

3   custody pursuant to the judgment of a State court only on the ground that he is in custody in

4   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

5        The AEDPA altered the standard of review that a federal habeas court must apply with

6   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

7   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

8   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

9   to, or involved an unreasonable application of, clearly established Federal law, as determined by

10  the Supreme Court of the United States;" or "resulted in a decision that was based on an

11  unreasonable determination of the facts in light of the evidence presented in the State Court

12  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

13  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

14  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

15  because that court concludes in its independent judgment that the relevant state-court decision

16  applied clearly established federal law erroneously or incorrectly."  Lockyer, at 1175 (citations

17  omitted).  "Rather, that application must be objectively unreasonable."  Id. (citations omitted).

18       While habeas corpus relief is an important instrument to assure that individuals are

19  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

20  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

21  criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

22  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

23  factual determinations must be presumed correct, and the federal court must accept all factual

24  findings made by the state court unless the petitioner can rebut "the presumption of correctness

25  by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

26  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

27  110 F.3d 1380, 1388 (9th Cir. 1997).

28  ///

4

1    C.    Constitutional Right to Speedy Trial

2         Petitioner contends that the trial court erred by denying the motion to dismiss on speedy

3    trial grounds.

4         The governing United States Supreme Court precedent on the speedy trial aspect of the

5    Sixth Amendment is United States v. Marion, 404 U.S. 307 (1971). There, it was held that the

6    Sixth Amendment Speedy Trial Clause guarantees are triggered only by "a formal indictment or

7    information or else the actual restraints imposed by arrest." Id. at 320.

8         The instant offense occurred on August 4, 1998. The initial complaint (BM562068) was

9    filed on August 18, 1998, alleging driving under the influence. (CT 86.) Petitioner appeared at

10   his misdemeanor arraignment and entered a not guilty plea on August 26, 1998, he was cited and

11   released. Pretrial was set for October 2, 1998. (Id.) On October 2, 1998, Petitioner appeared

12   and waived time so the pretrial could be continued until October 9, 1998. (Id.) On October 9,

13   1998, Petitioner again appeared and waived time so pretrial could be continued until October 16,

14   1998. (Id.) On October 16, 1998, Petitioner again appeared and his pretrial was continued until

15   October 23, 1998. (Id.) On October 23, 1998, Petitioner appeared and this case was dismissed

16   because the district attorney had filed it as a felony (BF86797A) on October 15, 1998, and a

17   warrant was issued for Petitioner's arrest. (CT 2-6.)

18        On August 31, 1999, Petitioner was arrested and arraigned on September 1, 1999. (CT

19   10-12.) At his preliminary hearing on September 16, 1999, he entered a plea. At his sentencing

20   on October 27, 1999, the plea was rejected. On November 3, 1999, a motion to amend the

21   complaint was filed which made this a "three strikes" case. The motion was to be heard on

22   November 12, 1999, but defendant failed to appear. Petitioner was arrested and his preliminary

23   hearing was set for November 15, 1999, and ultimately he was bound over on December 1, 1999.

24   (CT 4.) The information was filed on December 10, 1999. (CT 19-23.)

25        During the trial court hearing on Petitioner's motion to dismiss the case based on a

26   violation of his speedy trial rights the following argument took place:

27        [Defense Counsel]: Your, Honor, everything is pretty much covered in my moving
          papers but, basically, what happened was that his case was dismissed and after his case
28        - - his first case was dismissed on October 15th and after it was dismissed, he made two

more court appearances.  It was dismissed on the 15th, he made two more court appearances, one on the 16th and another one on the 23rd, and then he informed me, which isn't in my moving papers, that even after that, during the pendency of this warrant, because the warrant was issued on October 15th, he had a speeding ticket in Shafter and from C.H.P., I don't have the documentation for that, yet, but anyway, during that whole period the warrant was out, but it was never served, and he was unaware of that warrant.

[The Court]: Ms. Marshall?

[Ms. Marshall]: Yes, your Honor.  It's correct that the [Petitioner] did make two court appearances after this case was refiled as a felony, but he was represented by counsel, Public Defender's Office, as both appearances in CJIS reflect; the Court was informed at that time that this case hadn't been refiled as a felony, so this [Petitioner] was aware of the warrant.

I don't know about the ticket with the CHP.  This is the first time I have heard of that.  The [Petitioner] - - my response is also pretty clear, and I believe the defense counsel's - - defense counsel is willing to stipulate it's not certified, if the Court would care to look at that and, apparently, the deputy was unable to locate the address and asked for a day-shift deputy to do that.  Apparently, that wasn't done, and the [Petitioner] was eventually arrested on an unrelated case.

[The Court]: Ms. Johnston?

[Defense Counsel]:  Apparently that appears to be in order, your Honor.  My whole motion, though, is based on the fact that there was plenty of opportunity, 11 months.  This wasn't even a - - they didn't actually go to serve this warrant.  They went on another unrelated matter, so we have 11 months; during that 11 months he has suffered some real prejudice because the blood in this case, it's a D.U.I., was destroyed, and now it's being filed as a three strikes case, and we have some serious defense problems because of the State's negligence to file the warrant.

[The Court]: . . . All right.  Denied.

(RT of 1/13/00, at 2-4.)

In reviewing Petitioner's claim, the Fifth District Court of Appeal, finding the invocation of a state, not federal, right to a speedy trial held as follows:

[Petitioner] has not established such actual prejudice in the present case, having failed to establish how detecting prescription drugs in the blood sample would provide the basis for a defense.  Defense counsel made no offer of proof that the presence of drugs would somehow skew the blood test results as to alcohol content.  Nor could [Petitioner] be aided by the determination that he had ingested (presumably) prescription drugs, either alone or in combination with alcohol.  Section 23152, subdivision (a) plainly applies to "any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug. . . ."  Any exemption for prescription drugs has been specifically prohibited by the Legislature:
"The fact that any person charged with driving under the influence of any drug or the combined influence of alcoholic beverages and any drug in violation of Section 23152 is, or has been entitled to use, the drug under the laws of this state shall not constitute a defense against any violation of the sections." ([Ca. Pen. Code] § 23630.)
[Petitioner] argued to the trial court that destruction of the blood sample prevented the defense from determining "the effect of the [drug] interactions with the alcohol."  But one does not need the sample to ascertain such effect.  The state forensic criminalist testified that alcohol and codeine are both central nervous system depressants and that

6

1  combining them "would exacerbate the situation, make it worse." Evidence of such
2  multiple substance abuse would only indicate that [Petitioner] was effectively more
   intoxicated than his blood alcohol level indicated.

3  (Respondent's Exhibit E, at 4-5.)

4
5      The state courts' denial of Petitioner's speedy trial claim was a reasonable application of
6  his Sixth Amendment right to a speedy trial. As just stated, the right to a speedy trial under the
7  Sixth Amendment does not arise until after a defendant is indicted or is subject to "the actual
8  restraints imposed by arrest and holding to answer a criminal charge." Id. Because the delay of
9  which Petitioner bases his claim did not occur while Kern County was detaining him and was
10 prior to its filing of formal charges against him in the information,[4] the delay does not implicate
   the Sixth Amendment right to a speedy trial.

11 D.    Admission of Preliminary Alcohol Screening Test
12     Petitioner contends that the trial court erred by admitting the PAS test and this denied him
13 a fair trial.

14     Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a
15 federal habeas corpus proceeding. Estelle, 112 S.Ct. at 477; Middleton v. Cupp, 768 F.2d 1083,
16 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985). Nevertheless, there can be habeas relief for
17 the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a
18 denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871,
19 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d
20 1180, 1192 (9th Cir. 1993), cert. denied, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v.
21 Duran, 895 F.2d 610, 613 (9th Cir.1990). However, the failure to comply with state rules of
22 evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on
23 due process grounds. Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991). Only if
24 there are no permissible inferences that the jury may draw from the evidence can its admission
25 rise to the level of a due process violation. Id. at 920.

26 ///
27
28

_____

[4] The formal information was not filed until December 10, 1999. (CT 19-23.)

1

2    In rejecting Petitioner's claim on direct appeal, the Fifth District stated:

3        Given our ruling on the PAS results, [Petitioner] cannot plausibly maintain his
         contentions that the evidence was insufficient.  In arguing the importance of the
         destroyed sample, defense counsel characterized the evidence as overwhelming:
4        "[The prosecutors] get two chemical tests that put him over . . . .08 and it's almost
         a no brainer for the jury.  There is just no – we're left with absolutely no ability to
5        refute."  We agree with this assessment.

6    (Respondent's Exhibit E, Opinion, at 7.)

7        Petitioner has not demonstrated that the admission of the PAS test was fundamentally

8    unfair resulting in a denial of due process.  In addition to the PAS test, Petitioner displayed

9    objective signs of intoxication including, the strong odor of alcohol and redness of eyes. (RT 62.)

10   Prior to admission of the PAS test, officer Burris administered four other field sobriety tests

11   including the horizontal gaze nystagmus, hand-pat test, finger count, and modified position of

12   attention.  Petitioner's performance was unsatisfactory.  (RT 58-70, 79-80, 83-85, 93.)  The state

13   court found no prejudice from admission of the PAS results reasoning that based upon its state

14   statutory construction and upon its view that the PAS is essentially a "field sobriety test."

15   (Respondent's Exhibit E, at 6.)  Thus, the evidence of Petitioner's PAS test was not, in light of

16   the other evidence before the trier of fact, so prejudicial that its admission violated fundamental

17   due process and the right to a fair trial.  Accordingly, Petitioner's claim fails on the merits.

18                                    RECOMMENDATION

19       Based on the foregoing, it is HEREBY RECOMMENDED that:

20       1.      The petition for writ of habeas corpus be DENIED; and

21       2.      The Clerk of Court is directed to enter judgment in favor of Respondent.

22       These Findings and Recommendations are submitted to the assigned United States

23   District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-

24   304 of the Local Rules of Practice for the United States District Court, Eastern District of

25   California.  Within thirty (30) days after being served with a copy, any party may file written

26   objections with the court and serve a copy on all parties.  Such a document should be captioned

27   "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections

28   shall be served and filed within ten (10) court days (plus three days if served by mail) after

1  service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to

2  28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the

3  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

4  F.2d 1153 (9th Cir. 1991).

5

6  IT IS SO ORDERED.

7  **Dated:    May 26, 2005**                     _____/s/ Sandra M. Snyder_____
   icido3                                       UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28